UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                      Case Number:  08-15440-7

JAMES D. FIBISON and
LISA F. FIBISON,

        Debtors.

---

RANDI L. OSBERG, TRUSTEE,

        Plaintiff,

v.                                                          Adversary Number: 10-25

GEORGE T. FIBISON,

        Defendant.

---

MEMORANDUM DECISION
DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

James and Lisa Fibison filed this bankruptcy case in October of 2008. The previous January, James executed a quit claim deed to certain real estate in favor of his father George, the defendant in this adversary proceeding. The chapter 7 trustee seeks to avoid this transaction as a fraudulent transfer under either § 548(a)(1)(B) of the bankruptcy code or Wis. Stat. § 242.04(1)(b).[1] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and the Court has jurisdiction under 28 U.S.C. § 1334. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

[1] The trustee has standing to pursue fraudulent transfers under state law pursuant to 11 U.S.C. § 544(b).

The parties appear to agree on the following facts. In April of 2001, James and his father entered into a land contract for the purchase of a parcel of vacant land.[2] The contract contemplated that George would make monthly payments totaling $21,300.00 in exchange for the property. According to George, he satisfied the purchase price in December of 2007.[3] After execution of the land contract, George purchased a trailer, placed it on the property, and began living there.[4] In 2004 he began to build a house on the property.[5] James did not contribute anything toward the construction of the home.[6] As George built the home himself, he did not incur labor costs, although he indicates that he spent more than $19,000.00 in materials.[7] The trustee has proffered appraisals of the property which indicate that it might have been worth approximately $88,000.00 as of the

---

[2] See Exh. 4 to Seelen Aff. filed in support of the trustee's motion for summary judgment (copy of unrecorded land contract).

[3] According to the trustee, George paid James a total of $19,574.00. See Paragraph 5 of the statement of facts in the trustee's memorandum of law. George simply indicates that he "satisfied the entire purchase price" by December of 2007. See Fibison Aff. ¶ 4 filed in opposition to the trustee's motion for summary judgment. Neither party has indicated the reason for this apparent discrepancy between the total of George's payments and the original purchase price.

[4] Fibison Aff. ¶ 8. Construction of the home is not yet complete. Fibison Aff. ¶ 11.

[5] Fibison Aff. ¶ 9.

[6] Fibison Aff. ¶ 13.

[7] Fibison Aff. ¶ 12.

January 2008 execution of the quit claim deed.[8] The appraisal also indicates a potential value as of June 2010 of $117,000.00.[9]

The reason for this adversary proceeding is simple. George and James may have signed the land contract in 2001, but neither of them recorded it. As such, the trustee believes that the January 2008 quit claim deed which transferred the property from James to George constitutes a fraudulent transfer because James did not receive reasonably equivalent value for the land. In exchange for a parcel of real property worth $88,000.00, he received less than $20,000.00 (or less than one-fourth of its ostensible value at the time). The trustee cites to this Court's decision in Osberg v. Risler (In re Risler), 443 B.R. 508 (Bankr. W.D. Wis. 2010), for the proposition that the trustee may rely on the face of the deed to determine ownership, regardless of any equitable interests that may exist. On the face of the deed, James owned the property in January of 2008; since he transferred it for far less than it was worth, the transfer should be avoided.[10]

George, of course, notes the inequitable result that will occur if the trustee is correct. He has lived on the land for approximately nine years and has slowly improved the property through the construction of his home over the past seven

---

[8] Seelen Aff. Exh. 2.

[9] Seelen Aff. Exh. 3.

[10] Avoidance of a constructively fraudulent transfer is premised upon a lack of reasonably equivalent value and a determination of insolvency or other clear financial distress (i.e., the debtor was engaged in, or about to engage in, business or a transaction for which any remaining property constituted "unreasonably small capital," or the debtor intended to incur debts which were beyond his or her ability to pay as they matured). See 11 U.S.C. § 548(a)(1)(B) and Wis. Stat. § 242.04(1)(b). George does not dispute his son's insolvency; rather, the focus is on the nature and timing of the transfer.

years. Any significant appreciation in value is largely due to his efforts. He thought he had bought the land from his son. He made the payments and received a deed. To have his home taken away from him certainly seems unfair. He argues that after execution of the land contract in 2001, James had only bare legal title to the real estate, and that the execution of the quit claim deed should relate back to the date the land contract was originally signed. For purposes of this bankruptcy proceeding, the debtor's interest in the property is determined by relevant state law. Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). To resolve this dispute, the Court must therefore turn to Wisconsin law regarding land contracts, the recording of interests in real estate, and the rights of bona fide subsequent purchasers.

George cites to the case of Mueller v. Novelty Dye Works, 273 Wis. 501, 78 N.W.2d 881 (Wis. 1956). In that case, a couple conveyed a parcel of real property to their son under a "support deed" which reserved a life estate interest for themselves. The son subsequently sold the property to another couple. After the contract for sale was signed but prior to closing, two companies docketed a judgment against the son. The question was whether the real estate was still the son's property at the time the judgment was docketed. The court cited the doctrine of "equitable conversion" and held that the vendees under the sales contract became the equitable owners of the land upon execution of the contract, even before payment of the purchase price. Id. at 883. According to the court, "The vendee, from the date of the contract, has full rights over the land and may sell it,

incumber it, or devise it to his heirs as real estate. The vendor has no such rights." Id. at 505-06.

George suggests that under Mueller an unrecorded land contract in Wisconsin can be retroactively perfected by the subsequent delivery of a deed because the owner has no rights to the property itself after execution of the contract. It is true that George became the equitable owner of the property upon execution of the land contract. See In re Fitzpatrick, 29 B.R. 701, 703 (Bankr. W.D. Wis. 1983) (vendees under unrecorded land contract became equitable owners of property at time of conveyance). The doctrine of equitable conversion is based upon the premise that "equity treats that as being done which should be done." Milwaukee v. Greenberg, 163 Wis. 2d 28, 471 N.W.2d 33, 36 (Wis. 1991) (citing 8A Thompson on Real Property § 4447, pp. 273-74 (1963)). The land contract vendor holds legal title, but the vendee is the only one with full rights over the land as of the date of the contract and must be regarded as the "real" owner. 471 N.W.2d at 36.[11]

However, it is also true that such an equitable interest can be defeated if it is left unrecorded. Wis. Stat. § 706.08(1)(a) provides that:

> *[E]very* conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first (emphasis added).

---

[11] At the same time, the Wisconsin Supreme Court has recognized that the question of ownership of the property subject to a land contract is "troublesome," and that there may be a "measure of ownership" in both parties to such a contract. 471 N.W.2d at 37 (quoting Evans-Lee Co. v. Hoton, 190 Wis. 207, 211, 208 N.W. 872 (Wis. 1926)).

5

These recording requirements "shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." See Wis. Stat. § 706.001(1).[12] As such, these provisions indicate that the rights of a vendee under an unrecorded land contract may be trumped by a subsequent purchaser.[13] The key is whether that purchaser is deemed to have acted in "good faith" within the meaning of the statute.

Under Wisconsin law, a purchaser in good faith is one without notice of any existing rights in the land. Bump v. Dahl, 26 Wis. 2d 607, 133 N.W.2d 295, 299 (Wis. 1964). This includes both actual and constructive notice. Actual notice is a relatively straightforward concept: a purchaser with personal knowledge of a prior claim to the property cannot be a purchaser in good faith and may not utilize the recording statute to defeat the prior claim.[14] Constructive notice, on the other hand, is a bit more involved. In Bump, the court stated:

---

[12] As noted by the court in Adashek v. Szatkowski (In re Szatkowski), 51 B.R. 104, 106 (Bankr. E.D. Wis. 1985), chapter 706 of the Wisconsin Statutes was enacted long after Mueller and contains Wisconsin's present recording requirements. The definition of "conveyance" no longer excepts "executory contracts for the sale or purchase of land" from its meaning. Under the current definition, such an unrecorded "conveyance" is "void as against a subsequent bona fide purchaser for value." Id.

[13] In this regard, it must be noted that Mueller involved a situation in which a *judgment creditor* sought to claim a superior interest to that of the purchaser under a contract for the sale of real estate. Under Wisconsin law, a judgment creditor is not a bona fide purchaser for value who may rely upon the recording act. West Federal Sav. & Loan Ass'n v. Interstate Inv., Inc., 57 Wis. 2d 690, 693-94, 205 N.W.2d 361 (Wis. 1973).

[14] This concept is not a new one. As the court observed in Bump, "At common law the rule 'first in time, first in right' prevailed, qualified by the doctrine of *bona fide* purchaser." 133 N.W.2d at 299. Essentially, the recording requirements are designed to protect honest subsequent purchasers; someone who buys a piece of property with the knowledge that it was already sold to someone else (even if that person has not yet recorded their interest) is simply not the type of person the law was designed to benefit.

6

> Constructive notice arises when a purchaser without knowledge is subjected on grounds of public policy to the liabilities he would be subject to had he in fact had knowledge, because he was in such a position that if he had exercised a reasonable degree of care in availing himself of the avenues of information open to him he could have acquired the knowledge.

Id. A good faith purchaser is one who properly consults three sources of information in order to learn of any competing claims to the property in question. These sources are the records in the office of the appropriate register of deeds, other public records, and the land itself, by which it is possible to "discover by observation the rights which arise outside of the recording system by virtue of possession or use." Id. at 300.

In the case of First Nat'l Bank v. Chafee, 98 Wis. 42, 73 N.W. 318 (Wis. 1897), the Wisconsin Supreme Court was confronted with determining the relative priorities of various parties when the assignee of a land contract commenced a foreclosure action against the vendee in possession, the vendor, and a subsequent mortgagee of the vendor. Neither the land contract nor the assignment had been recorded, and the mortgagee had no knowledge of either of them. The court concluded that the unrecorded assignment of the vendor's interest was subordinate to that of the subsequent mortgagee because the mortgage had been recorded first. However, the mortgagee's interest was itself subordinate to that of the vendee (even though the land contract was not recorded) because actual possession of the land constituted constructive notice to the mortgagee and the world of the vendee's interest in the land. Id. at 319.

Likewise, in Bump the primary dispute was between two purchasers: one who acquired his interest pursuant to an oral agreement but was in actual

7

possession of the property, and another purchaser who had subsequently bought the same parcel.  The court noted that a party's possession of the land is constructive notice to a subsequent purchaser if the possession is "visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with, or adverse to the title or interest of the vendor." 133 N.W. 2d at 298 (quoting Ubbink v. Herbert A. Nieman & Co., 265 Wis. 442, 62 N.W.2d 8 (Wis. 1953)). In fact, subsequent purchasers are charged with notice of all the rights of the possessor and "of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose." Id. at 300.

How does Wisconsin's concept of constructive notice impact the outcome of this case?  Well, as the King said to Alice (while she was in Wonderland), "Begin at the beginning and go on til you come to the end." The filing of a bankruptcy creates a bankruptcy estate. The trustee's task is to liquidate estate assets for the benefit of creditors, and the code imbues the trustee with a variety of powers that may be utilized to assure a relatively fair distribution of those assets to similarly-situated creditors. Under the "strong arm" provisions of 11 U.S.C. § 544(a)(3), a bankruptcy trustee shall have the rights and powers of a "bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case."  As such, a bankruptcy trustee in Wisconsin may exercise the rights of a subsequent purchaser under Wis. Stat. § 706.08(1).

The purpose of the strong-arm statute is to arm the trustee with the ability to gather in the property of the estate. HSBC Bank USA v. Perkins, 451 B.R. 555

(N.D. Ala. 2011). In contrast to state law, the bankruptcy trustee's *actual* knowledge is irrelevant to this hypothetical bona fide purchaser status. See 11 U.S.C. § 544(a) (the trustee's rights are "without regard to any knowledge of the trustee or of any creditor"); see also Berge v. Value Enterprises, Ltd. (In re Berge), 39 B.R. 960 (Bankr. W.D. Wis. 1984). However, the trustee's abilities may be impacted by the effect of constructive notice or inquiry notice which an actual subsequent purchaser would be subject to under applicable state law. If such a purchaser would be on notice of a competing claim, the trustee's strong-arm powers are likewise impacted. See In re Probasco, 839 F.2d 1352 (9th Cir. 1988) (constructive notice of unrecorded interest precluded avoidance); Brown v. Job (In re Polo Builders, Inc.), 433 B.R. 700 (Bankr. N.D. Ill. 2010) (trustee could not avoid unrecorded interest of party in possession of property).

As a result, under § 544(a)(3), the trustee could not have utilized the recording statute to avoid George's interest in the property. See Fitzpatrick, 29 B.R. at 704 ("Thus if [the vendees] in the present case were in actual physical possession of the property, there could be no dispute that the trustee had constructive notice."). Because George has had sole possession of the property since 2002, and because any inquiry of him would have revealed an interest that was inconsistent with or adverse to the record title, the trustee could not be considered a "subsequent purchaser, in good faith and for value" under Wisconsin law. But this action was not pled under § 544(a)(3). Instead, the trustee claims that the 2008 transfer constitutes a fraudulent conveyance under § 548 or state law.

The crucial issue is whether George's possession of the property matters at all in that context.

Section 548 of the code empowers bankruptcy trustees to avoid fraudulent transfers which occurred "on or within 2 years before the date of the filing of the petition" for bankruptcy. The trustee argues that the transfer here took place in January of 2008 because that is when the quit claim deed was executed. For the purpose of determining whether a particular transfer occurred within the statutory two-year window, however, the code provides as follows:

> [A] transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee.

See 11 U.S.C. § 548(d)(1).[15] Essentially, a transfer "is made when it becomes valid as against a subsequent bona fide purchaser under applicable nonbankruptcy law." See 5 Collier on Bankruptcy ¶ 548.03[3] at 548-49 (16th ed. 2011). The purpose of this provision is to protect the estate from secret transactions by preventing a transfer from taking place until it is known or discoverable by the exercise of reasonable diligence. Id.; see also Butler v. Lomas and Nettleton Co., 862 F.2d 1015, 1019 (3d Cir. 1988).

---

[15] Wis. Stat. § 242.06 likewise defines when a transfer is made for purposes of the state fraudulent transfer provisions. A transfer is "made" when it is "so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee."

In the recent case of Smith v. SIPI, LLC (In re Smith), 614 F.3d 654 (7th Cir. 2010), the Seventh Circuit had the opportunity to examine this provision in the context of the issuance of tax deeds under Illinois law. The court stated:

> By referring to the time of "perfection," the statute of course does not mean the moment when the transferee has a literally "perfect" property interest but when, under governing state law, the transferee's interest is perfected relative to a potential BFP (citation omitted). So the issue in this case is when, under Illinois law, was SIPI's tax-buyer interest in the [debtor's] property so perfected that the [debtor] could no longer convey a "superior" interest to a BFP?

Id. at 658.

This question is equally crucial in this case. The debtor executed the land contract in 2001. George moved onto the property in 2002 and has remained in constant possession since that time. At what point did his interest become so "perfected" under state law that James could no longer convey a superior interest to a subsequent purchaser? As indicated, Wisconsin law provides that a subsequent purchaser is deemed to have notice of the interest of any person in actual possession of the property. This means that after his father began living on the property (or started building on the property), any subsequent transferee from James would take their interest subject to George's claimed interest because they would have had constructive notice of his claim.[16]

This result is clearly in keeping with the spirit of § 548(d)(1). To the extent that a subsequent purchaser could have exercised reasonable diligence and made an inquiry of the party in possession of the property, George's claim was known or

---

[16] The facts surrounding the occupant's possession of the property will clearly determine the outcome of cases such as this. The land contract vendee must prove possession and a claim which is adverse to the titled interest.

discoverable long before January of 2008. As the court observed in Polo Builders, the possession of property is notice of whatever rights to that property the party in possession claims, and "when the party claims title under a deed, possession is equivalent to the recording of the deed." 433 B.R. at 708. While George's interest may not relate back to the date the contract was executed in 2001, it became superior to the claim of any subsequent purchaser either in 2002 (when he moved onto the property) or 2004 (when he truly exercised exclusive management, control, and dominion over the property by starting construction of his home). At that point, James could not have transferred a "superior" interest to another purchaser; his father's possessory interest would defeat their claim to bona fide purchaser status.

All of this illustrates a crucial distinction between this case and the facts in Risler, which the trustee contends should be considered controlling. Risler involved a debtor who was the record co-owner of a parcel of real property as of the date of filing. The debtor contended that his son was the "real" owner of the property and that his own name was on the deed as a mere accommodation. Possession of property by a titled co-owner is not quite the same as actual possession by someone with no recorded interest whatsoever in the property.[17] In this case, the question is not what recorded interest the debtor had at the time of filing, but rather

---

[17] Risler was also decided in conformity with the Seventh Circuit's decision in Dubis v. Zarins (In re Teranis), 128 F.3d 469 (7th Cir. 1997). As the Seventh Circuit observed, "Third parties, be they prospective buyers or creditors, cannot be expected to investigate the possibility of unequal ownership . . . they can rely upon the face of the deed indicating that each joint tenant has an equal interest in the property." Id. at 472.

12

the effect of George's possessory interest in determining the timing of the "transfer" of title to the property.

As the Wisconsin Supreme Court has indicated, the claimant's possession must not only be visible, open, clear, full, notorious, unequivocal, and unambiguous, but must also be "inconsistent with, or adverse to the title or interest of the vendor." Bump, 133 N.W.2d at 298. Certainly in this case, George's actual possession of the property put "the world" on notice of his interest. Chafee, 73 N.W. at 319. Because George's interest became paramount to the claims of subsequent purchasers far more than four years before the filing of his son's bankruptcy case, the trustee may not avoid it as a fraudulent transfer.

An order and judgment shall be entered consistent with this decision.

Dated: December 12, 2011

                                                BY THE COURT:

                                                /s/ Thomas S. Utschig

                                                Hon. Thomas S. Utschig
                                                U.S. Bankruptcy Judge